**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

**MITCHELL WILLIAMS**

**VERSUS**

**CIVIL ACTION**

**NO. 16-93-SDD-EWD**

**LOUISIANA, ERIN DELANY,**
**ILLINOIS, HEATHER V. KIMMONS,**
**SECRETARY OF STATE OF HAWAII,**
**SECRETARY OF STATE OF NEW MEXICO**

<u>**NOTICE**</u>

     Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

     In accordance with 28 U.S.C. §636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

     ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

     Signed in Baton Rouge, Louisiana, on June 27, 2016.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

Certified Mail - 7004 1160 0003 2648 7311

## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**MITCHELL WILLIAMS**

**CIVIL ACTION**

**VERSUS**

**NO. 16-93-SDD-EWD**

**LOUISIANA, ERIN DELANY,**
**ILLINOIS, HEATHER V. KIMMONS,**
**SECRETARY OF STATE OF HAWAII,**
**SECRETARY OF STATE OF NEW MEXICO**

## REPORT AND RECOMMENDATION

This matter is before the Court following a hearing pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to determine whether all or any part of this case should be dismissed as frivolous because (1) the complaint has no realistic chance of ultimate success; or (2) it has no arguable merit in terms of the arguable substance of the claims presented, both in law and in fact; or (3) beyond doubt, the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. *See*, *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986). For the reasons that follow, it is recommended that Plaintiff's claims in this matter be DISMISSED with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B).

### I.  Factual and Procedural Background

Pro se plaintiff, Mitchell Williams ("Plaintiff"), filed his "Complaint and Class Action Lawsuit Request for Expedited Review & Injunction" (the "Complaint") on February 12, 2016.[1] Therein, Plaintiff named Louisiana, Erin Delany,[2] Illinois, Heather V. Kimmons,[3] the Secretary of

---

[1] R. Doc. 1.

[2] Per a letter attached to Plaintiff's Complaint, Erin Delany is the Director of Elections, Balloting, Commissions, and Publications with the Louisiana Secretary of State. R. Doc. 1-1.

[3] Per a letter attached to Plaintiff's Complaint, Heather V. Kimmons is legal counsel with the State Board of Elections for the State of Illinois. R. Doc. 1-1.

State of Hawaii, and the Secretary of State of New Mexico (Illinois, Ms. Kimmons, and the Secretaries of State of Hawaii and New Mexico are collectively referred to herein as the "Non-Forum Defendants") as defendants.

Plaintiff alleges that he seeks to run for President of the United States as a write-in candidate and expresses dissatisfaction with write-in procedures for certain states. Specifically, Plaintiff alleges that some states "flatly refused to receive the Plaintiff's Declarations because they don't recognize any write-in vote (New Mexico, Louisiana, Hawaii…)."[4] Plaintiff further alleges that other states "do allow write-in votes but they throw up mile high walls so that most cannot qualify, often involve a petition drive to gather thousands of names of voters in those states. Typical of these walls is the required fileing [sic] in every county of Illinois."[5] Plaintiff argues that "[t]hose states that show a willingness to deny anyone free access to their ballot as a write-in candidate are violative of the Freedom of Speech and Equal Protection clauses of the U.S. Constitution."[6] Plaintiff demands an injunction.[7]

Plaintiff's motion to proceed in forma pauperis was granted on April 12, 2016.[8] Thereafter, the Court set a *Spears* hearing to determine whether Plaintiff's Complaint should be dismissed as frivolous.[9] At the May 16, 2016 *Spears* hearing, the Court questioned Plaintiff regarding whether he had any information to suggest the Non-Forum Defendants had sufficient contacts with the State of Louisiana for this Court to exercise personal jurisdiction. Plaintiff could not state any contacts the Non-Forum Defendants have with the State of Louisiana. The Court also questioned

---

[4] R. Doc. 1, ¶ 2.

[5] R. Doc. 1, ¶ 2.

[6] R. Doc. 1, ¶ 3.

[7] R. Doc. 1, ¶ 8.

[8] R. Doc. 5.

[9] R. Doc. 6.

Plaintiff regarding which specific provisions of the Louisiana qualification procedures for independent candidates he contends are severely burdensome.  Plaintiff admitted that he had not thoroughly reviewed the procedures set forth in La. R.S. § 18:1254 for qualifying as an independent candidate for presidential elector for the office of president.  Accordingly, he could not point to any specific provisions that are severely burdensome.  Plaintiff therefore requested an opportunity to submit a brief regarding his position that the requirements for appearing on the general election ballot are severely burdensome after he had a chance to review the procedures.

On June 3, 2016, Plaintiff filed his supplemental brief.[10]  Therein, Plaintiff asserted that "[t]he requirements for an acceptable notice of candidacy (i.e., 8 presidential electors, affidavits of acceptance of nomination, and $500 or a nominating petition with 5000 or more signatures of registered voters) are all an undue burden for prospective write-in candidates for the presidential office."[11]  While Plaintiff recognized that these requirements would not be "much of a problem" for a "prominent local Louisiana resident," Plaintiff complained that such requirements "are more of a burden on office seekers that are not resident [sic] in Louisiana than they are for local residents."[12]  Plaintiff further clarified that he is "NOT DEMANDING that his name be placed on the presidential ballot."[13]  Instead, Plaintiff demands that defendants accept his Notice of Candidacy[14] and that "[a] blank space for voters to write in the names of a candidate of their choice, be put on every ballot."[15]

---

[10] R. Doc. 12.

[11] R. Doc. 12, p. 1.

[12] R. Doc. 12, p. 1.

[13] R. Doc. 12, p. 1.

[14] Plaintiff attached a one-page Notice of Candidacy to his supplemental brief.  R. Doc. 12, p. 5.  He contends that "[n]othing more should be required to be put on the list of registered write-in candidates."  R. Doc. 12, p. 2.

[15] R. Doc. 12, pp. 1-2.  In addition to a blank space for write-in candidates, Plaintiff explains his demand as follows: "(b) except for cause (fraud, etc.) no legally sufficient notice of candidacy can be rejected by any state; (c) a list be made in the Secretary of State's office of the write-in candidates that have sent in a legally sufficient notice of

## II.      Applicable Law and Analysis

Pursuant to the provisions of 28 U.S.C. § 1915(e)(2)(B), this Court is authorized to dismiss an action brought in forma pauperis if satisfied that the action is frivolous or malicious.  *Cf.*, *Green v. McKaskle*, 788 F.2d 1116, 1119 (5th Cir. 1986).  An in forma pauperis suit is properly dismissed as frivolous if the claim lacks an arguable basis in either fact or in law.  *Denton v. Hernandez*, 504 U.S. 25, 31 (1992), *citing Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995).  A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory."  *Neitzke*, 490 U.S. at 327.  The Fifth Circuit has stated three standards which a district court may use to determine whether a claim is frivolous.  "The first requires a determination of whether the IFP complaint has a realistic chance of ultimate success.  The second requires that the complaint have 'arguable merit ... in terms of the arguable substance of the claim presented, both in law and in fact.'  The third prohibits dismissal 'unless the court is satisfied 'beyond doubt' that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  *Green*, 788 F.2d at 1120 (internal citations omitted).

### A.  Personal Jurisdiction Over Non-Forum Defendants

The Court first considers whether it can exercise personal jurisdiction over the Non-Forum Defendants.  For the reasons discussed herein, the Court finds that exercise of personal jurisdiction over the Non-Forum Defendants would violate due process, therefore Plaintiff's claims against the Non-Forum Defendants have no realistic chance of success in this Court.

In *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476 (5th Cir. 2008), the Fifth Circuit considered whether the United States District Court for the Southern District of Texas could

---

candidacy to their office….; (d) the counting of such write-in votes takes care of itself.  If a write-in candidate should get a very large percentage of the votes they would be fools not to count them.  If only a few that cannot effect the election, they can be ignored."  R. Doc. 12, p. 2.

exercise personal jurisdiction over the Commissioner of the Arizona Department of Real Estate (the "Commissioner").   The Commissioner had determined that plaintiff and its agents were engaged in unlicensed timeshare resale brokering in violation of Arizona law and had sent cease and desist letters to plaintiff at its Texas office ordering it to cease all contact with Arizona residents and non-resident owners of real estate located in Arizona.  *Id.* at 480.  The Fifth Circuit held that exercising personal jurisdiction over the Commissioner in the Southern District of Texas would violate due process.  *Id.* at 483.  First, based on the Commissioner's minimal contacts, the court found that the Commissioner "could not have reasonably anticipated being haled [sic] into federal court in Texas to defend her enforcement of the Arizona statute." *Id.* at 484.   Additionally, the court reasoned that "[a]llowing the Southern District of Texas to assert jurisdiction over the Commissioner creates the possibility that the Commissioner will have to defend her attempt to enforce Arizona laws in courts throughout the nation."  *Id.* at 487.  As the court explained:

> When a state defends its laws in a faraway forum, it loses the benefit of having the laws examined by local state or federal courts – courts that have special expertise interpreting its laws.  See, e.g., *Leroy v. Great W. United Corp.*, 443 U.S. 173, 186, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979) ("[F]ederal judges sitting in Idaho are better qualified to construe Idaho law, and to assess the character of Idaho's probable enforcement of that law, than are judges sitting elsewhere.").  Conversely, although a Texas court certainly has an interest in determining the legitimacy of Texas statutes, states have "little interest in adjudicating disputes over other states' statutes." *PTI, Inc. v. Philip Morris, Inc.*, 100 F.Supp.2d 1179, 1189 n. 8 (C.D.Cal.2000).  At the same time, Arizona, as a sovereign, has a strong interest in not having an out-of-state court evaluate the validity of its laws.
>
> ***
>
> Important questions of federalism are present here, and thus, for this case, "the shared interest of the several states" is the most significant reasonableness consideration outlined by the Supreme Court. Federalism and state sovereignty are an essential part of the constraints that due process imposes upon personal jurisdiction.

> Those constraints do more than "protect the defendant against the burdens of litigating in a distant or inconvenient forum"; they also "ensure that the States through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." *World–Wide Volkswagen*, 444 U.S. at 292, 100 S.Ct. 559. "The sovereignty of each State ... implie[s] a limitation on the sovereignty of all of its sister States—a limitation express or implicit in both the original scheme of the Constitution and the Fourteenth Amendment." *Id*. at 293, 100 S.Ct. 559.

> *Id*. at 487-88.

Here, Plaintiff has put forth no evidence or argument supporting the exercise of in personam jurisdiction over the Non-Forum Defendants. Significantly, it appears from Plaintiff's Complaint and supplemental briefing that the Non-Forum Defendants have not had *any* contact with Louisiana. Plaintiff resides in Palatka, Florida. Documents attached to his Petition reflect that the Non-Forum Defendants sent correspondence to Plaintiff's Florida address regarding each respective state's election procedures.[16] Accordingly, this case for personal jurisdiction is even more attenuated than that set out in *Stroman*, where the non-forum state official sent correspondence seeking to enforce another state's law into the forum state. Moreover, this Court concludes that the effect of exercising personal jurisdiction over the Non-Forum Defendants here, as in *Stroman*, "would create an avenue for challenging the validity of one state's laws in courts located in another state. This practice would greatly diminish the independence of the states." *Id*. at 488. As in *Stroman*, this Court finds the exercise of personal jurisdiction over the Non-Forum Defendants would violate due process. Accordingly, Plaintiff's suit against the Non-Forum Defendants cannot be maintained.

---

[16] *See*, R. Doc. 1-1.

## B.   Claims Related to Louisiana Election Code

Plaintiff's remaining claims are against the State of Louisiana and Erin Delany, the Director of Elections, Balloting, Commissions, and Publications with the Louisiana Secretary of State.  Plaintiff attempted to submit his Notice of Candidacy in Louisiana.  In response to Plaintiff's Notice of Candidacy, Plaintiff received a letter from the Louisiana Secretary of State explaining that Louisiana Revised Statutes do not contain any provisions for write-in candidates.[17]  Plaintiff's supplemental brief makes clear that his primary purpose in filing this suit is to require the defendants to include a blank space for voters to write-in the names of candidates.[18]  However, in response to this Court's inquiries regarding Plaintiff's ability to comply with the requirements for qualifying as an independent candidate, Plaintiff also generally asserts that those statutory requirements are an undue burden.[19]  Plaintiff did not, either in his supplemental briefing or during the *Spears* hearing, explain any steps he has taken in an attempt to comply with Louisiana statutory requirements related to independent candidates.

### 1.   Write-In Candidacy

In *Burdick v. Takuski*, the United States Supreme Court upheld Hawaii's ban on write-in candidates.  504 U.S. 428 (1992).  There, the petitioner filed a lawsuit asserting he wanted to vote for a write-in candidate.  The district court held that the state's prohibition on write-in voting violated the petitioner's First Amendment rights of expression and association.  The Supreme Court disagreed, explaining that not every law that imposes a burden on the right to vote is subject to strict scrutiny.  *Id*. at 433 ("to subject every voting regulation to strict scrutiny and to require that the regulation be narrowly tailored to advance a compelling state interest, as petitioner

---

[17] R. Doc. 1-1, p. 3.

[18] R. Doc. 12, p. 1.

[19] R. Doc. 12, p. 1.

suggests, would tie the hands of States seeking to assure that elections are operated equitably and efficiently.").  After reviewing Hawaii's multiple methods of qualifying for a position on the state's general election ballot, the Court found that "[a]lthough Hawaii makes no provision for write-in voting in its primary or general elections, the system outlined above provides for easy access to the ballot until the cutoff date for the filing of nominating petitions…." *Id*. at 437.  The Court then found that Hawaii's interests in avoiding "unrestrained factionalism" and "divisive sore-loser candidacies" as well as promoting the "two-stage primary-general election process of winnowing out candidates" were sufficient to support any burden on petitioner's First and Fourteenth Amendment rights.  *Id*. at 440.  The *Burdick* Court concluded that "when a State's ballot access laws pass constitutional muster as imposing only reasonable burdens on First and Fourteenth Amendment rights…a prohibition on write-in voting will be presumptively valid, since any burden on the right to vote for the candidate of one's choice will be light and normally will be counterbalanced by the very state interests supporting the ballot access scheme." *Id*. at 441.  Under *Burdick*, this Court must therefore consider whether Louisiana's ballot access laws "pass constitutional muster."  If so, the alleged prohibition on write-in voting will be "presumptively valid."

## 2.   Independent Candidate Procedures

To qualify as an independent candidate for presidential elector under the Louisiana Election Code, a full slate of eight candidates for presidential elector (one from each of the six congressional districts and two from the state at-large) must submit a Notice of Candidacy along with an Affidavit of Acceptance of Nomination plus either a $500.00 nominating fee or a nominating petition containing at least 5,000 signatures.  *See*, La. R.S. § 18:1854(A); La. R.S. § 18:465(C)(1).  Plaintiff asserts that these requirements "are all an undue burden for prospective

write-in candidates…[and] are more of a burden on office seekers that are not resident [sic] in Louisiana….”[20]

As an initial matter, the Court notes that "[t]here is no fundamental right to be a candidate. 'Far from recognizing candidacy as a 'fundamental right,' the Supreme Court has 'held that the existence of barriers to a candidate's access to the ballot 'does not itself compel close scrutiny.'" *Hatten v. Rains*, 854 F.2d 687, 693 (5th Cir. 1988). Although "[v]oting is of the most fundamental significance in our constitutional system....the right to vote in any manner and the right to associate for political purposes through the ballot are not absolute. As a practical matter, there must be substantial regulation of elections to ensure fairness, honesty, and order." *Texas Independent Party v. Kirk*, 84 F.3d 178, 182 (5th Cir. 1996). As explained by the Fifth Circuit,

> A court considering a challenge to a state election law must weigh the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments against the precise interests put forward by the State as justifications for the burden imposed by its rule. The rigorousness of the inquiry into the propriety of the state election law depends upon the extent to which the challenged regulation burdens First and Fourteenth Amendment rights. When those rights are subjected to severe restriction, the regulation must be narrowly tailored to advance a compelling state interest. But when a state election law imposes only reasonable, nondiscriminatory restrictions upon the First and Fourteenth Amendment rights of voters, the State's important regulatory interests are generally sufficient to justify the restrictions.

> *Id*. (citing *Burdick v. Takuski*, 504 U.S. 428 (1992) and *Anderson v. Celebrezze*, 460 U.S. 780 (1983)).

The Fifth Circuit has explained that since Supreme Court precedent "clearly establish[es] the constitutionality of conditioning ballot access on a preliminary showing of a substantial modicum of popular support, the validity of such requirements, absent any peculiarly invidious feature, will

---

[20] R. Doc. 12, p. 1. To the extent Plaintiff complains that Louisiana's procedures would be less burdensome for Louisiana candidates, the Court finds such argument patently unpersuasive in the context of a national election, where a candidate will be required to obtain support from multiple (as opposed to just his home) state(s).

usually present a 'how much' rather than 'whether' question." *Dart v. Brown*, 717 F.2d 1491, 1503 (5th Cir. 1983). Based on this Court's review of similar ballot access requirements, the Court finds that the Louisiana statutes regulating independent candidates for presidential elector pass constitutional muster.[21]

### a.   $500.00 Filing Fee

With regard to the $500.00 filing fee, the Court finds it dispositive that the filing fee is *not* an absolute requirement. In *Bullock v. Carter*, 405 U.S. 134, the Supreme Court invalidated a Texas law which required a candidate to pay a filing fee as a condition to having his name placed on the ballot in a primary election. While the Court "emphasized that nothing herein is intended to cast doubt on the validity of reasonable candidate filing fees…," it held that "[b]y requiring candidates to shoulder the costs of conducting primary elections through filing fees *and by providing no reasonable alternative means of access to the ballot*, the State of Texas has erected a system that utilizes the criterion of ability to pay as a condition to being on the ballot, thus excluding some candidates otherwise qualified and denying an undetermined number of voters the opportunity to vote for candidates of their choice." *Id.* at 859. (Emphasis added). The Court explained that "[t]hese salient features of the Texas system are critical to our determination of constitutional invalidity." *Id. See also*, *Lubin v. Panish*, 415 U.S. 709, 718 (1974) ("Selection of candidates solely on the basis of ability to pay a fixed fee without providing any alternative means

---

[21] The Court recognizes that in many cases, the state defendant is given an opportunity to respond in order to set forth its interest in controlling its elections. However, and as discussed herein, the provisions of Louisiana election law which Plaintiff asserts are severely burdensome are significantly *less* burdensome than provisions previously upheld by the Supreme Court. Moreover, a state may impose ballot access conditions that ensure a would-be candidate enjoys a modicum of popular support, and the Supreme Court has recognized that "'as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process.'" *See*, *Lubin v. Panish*, 415 U.S. 709, 718-19 (1974) & *Burdick v. Takuski*, 504 U.S. 428, 432 (1992) (quoting *Storer v. Brown*, 415 U.S. 724, 730 (1974)). In light of the jurisprudence discussed herein, the Court finds that this particular challenge to Louisiana election procedure can be decided without a response from the State of Louisiana.

is not reasonably necessary to the accomplishment of the State's legitimate election interests. Accordingly, we hold that in the absence of reasonable alternative means of ballot access, a State may not, consistent with constitutional standards, require from an indigent candidate filing fees he cannot pay.").

Here, a slate of electors for an independent candidate may *either* pay the $500.00 filing fee *or* submit a nominating petition containing at least 5,000 signatures.  In light of this alternative requirement, the Court next considers whether the requirements associated with the nominating petition could be considered unreasonable.  *See*, *Mathews v. Little*, 498 F.2d 1068, 1069 (5th Cir. 1974) (affirming dismissal of action for declaratory and injunctive relief based on alleged unconstitutional burdens on plaintiff's access to the ballot as a candidate where ordinance required payment of $500.00 filing fee or submission of a petition signed by not less than 2% of the registered voters in the candidate's district and explaining that "[t]he only conceivable escape for appellant from the compelling authority of the Supreme Court's decision in *Lubin* would be a showing that the petition requirement of at least two percent of the registered voters from her council district, while concededly an alternative, is somehow under the circumstances not a 'reasonable' alternative.").

### b.  Nominating Petition

Here, the Louisiana Election Code requires, as an alternative to paying the $500.00 filing fee, that a slate of electors for an independent candidate submit a nominating petition with at least 5,000 signatures.  La. R.S. § 18:1254(C); La. R.S. § 18:465(C)(1).  Of those 5,000 signatures, 500 must be from each of the six congressional districts in the state.  La. R.S. § 18:465(C)(1).

Supreme Court precedent makes it clear that states may enact provisions that require a candidate to show a modicum of support before being placed on the ballot.  *See*, *Lubin v. Panish*,

415 U.S. 709, 718-19 (1974) ("States may, for example, impose on minor political parties the precondition of demonstrating the existence of some reasonable quantum of voter support by requiring such parties to file petitions for a place on the ballot signed by a percentage of those who voted in a prior election.  Similarly, a candidate who establishes that he cannot pay the filing fee required for a place on the primary ballot may be required to demonstrate the 'seriousness' of his candidacy by persuading a substantial number of voters to sign a petition in his behalf.  The point, of course, is that ballot access must be genuinely open to all, subject to reasonable requirements.") (internal citations omitted).  *See also*, *Dart v. Brown*, 717 F.2d 1491, 1503 (5th Cir. 1983) (noting that Supreme Court decisions "clearly establish the constitutionality of conditioning ballot access on a preliminary showing of a substantial modicum of popular support…."); *Navarro v. Neal*, 716 F.3d 425, 430 (7th Cir. 2013) ("Ballot access laws that require 'the would-be candidate [to] demonstrate significant support for his candidacy by submitting thousands (or depending on the size of the electorate, tens or even hundreds of thousands) of petitions' place a reasonable, nondiscriminatory restriction on candidates' and voters' rights.") (internal citations omitted).

Here, in light of more stringent party and candidate nominating petition requirements which have been upheld by the Supreme Court, the Court finds Louisiana's nominating petition requirements reasonable.  For example, in *Jenness v. Fortson*, 403 U.S. 431 (1971), the Supreme Court considered a Georgia law that provided that a candidate who did not enter and win a political party's primary election could have his name printed on the ballot at the general election only if he filed a nominating petition signed by at least 5% of the number of registered voters at the last general election for the office in question and pay a filing fee equal to 5% of the annual salary of

the office is was seeking.[22]   The Court found that Georgia's 5% petition requirement did not

violate Constitutional protections of equal protection or the rights of free speech and association.

*Id*. at 440-42.  *See also*, *American Party of Texas v. White*, 415 U.S. 767 (1974) (approving

requirement that political party obtain 1% of the vote for the position in the last general election -

or approximately 22,000 signatures – to be gathered within 55 days); *Burdick v. Takushi*, 504 U.S.

428, n.3 (1992) (upholding statute requiring a party petition filed 150 days before the primary by

any group who obtains the signatures of 1% of the State's registered voters and noting that the

Court has "previously upheld party and candidate petition signature requirements that were as

burdensome or more burdensome than Hawaii's one-percent requirement.").  Louisiana requires

5,000 signatures as an alternative to paying the $500.00 filing fee.  Based on information posted

on the Louisiana Secretary of State's website, 2,935,142 voters were registered as of June 1,

2016.[23]  Five thousand voters would be approximately 00.17% of registered voters, or less than

one fifth of one percent of registered voters.[24]   Accordingly, the Court finds that the requirement

that a nominating petition reflect 5,000 signatures is reasonable.

### 3. Louisiana's Procedures Prohibiting Write-In Voting are Presumptively Valid.

Because the Court finds the alternative methods of either paying the $500.00 filing fee or

submitting a nominating petition with the required signatures are reasonable, the Court also finds

that the alleged prohibition on write-in voting is presumptively valid.  *See*, *Burdick v. Takushi*, 504

U.S. 428, 441 (U.S. 1992) ("when a State's ballot access laws pass constitutional muster as

---

[22] The *Jenness* Court also noted that there was no limitation whatsoever on the right of a voter to write-in a candidate. 403 U.S. at 434.  However, in light of the Supreme Court's instruction in *Burdick*, such write-in procedures are not necessary for a ballot access scheme to pass constitutional muster.

[23] *See*, http://www.sos.la.gov/ElectionsAndVoting/Pages/RegistrationStatisticsStatewide.aspx.

[24] The Fifth Circuit noted in *Dart v. Brown*, 717 F.2d 1491, n. 15 (5th Cir 1983) that "[f]ive thousand voters would be approximately one quarter of one percent of the 1,942,941 voters who were registered in Louisiana in 1981."

imposing only reasonable burdens on First and Fourteenth Amendment rights…a prohibition on write-in voting will be presumptively valid, since any burden on the right to vote for the candidate of one's choice will be light and normally will be counterbalanced by the very state interests supporting the ballot access scheme.").   Plaintiff has set forth no support for his position that *Burdick* is not controlling.[25]   Moreover, in light of Plaintiff's representations at the *Spears* hearing that he was not familiar with the procedures required for nominating an independent candidate for presidential elector, as well as his supplemental briefing asserting that he does *not* wish to be recognized as an independent candidate, it appears that Plaintiff has taken no steps toward fulfilling the requirements set forth by La. R.S. §§ 18:1254 and 465.   In light of the Supreme Court precedent discussed herein, the Court finds that Plaintiff's Complaint has no realistic chance of ultimate success.[26]   *See also*, *Germalic v. Schedler*, 2011 WL 3235654, at 2 (M.D. La. July 28, 2011)

---

[25] In his supplemental brief, and presumably in an attempt to distinguish or analyze *Burdick*, Plaintiff states:

> To the extent that the Supreme Court case from Hawaii allows states to control write-in votes, the Plaintiff believes that they never had any intention of encouraging a state policy of annihilation toward write-in candidates.   The ELEPHANT EXAMPLE will show the error of their ways:

> Herds of elephants can be a big problem.   They can raise and eat a whole field of pumpkins in one night.   People can be trampled by a sudden stampede.   They need to be controlled.   The Jon-Juwee Islamic terrorists are glad to do it.   As many as 70 in one night.   After which they thank and pray to Allah for giving them a pile of ivory that they can sell to buy more weapons.   That is, if the game wardens don't shoot them dead for their efforts.   Proper control involves keeping them within a safe area and not allowing, by culling, for them to destroy their food sources.   A freshly dead elephant is a mountain of meat ready for protein deficient diets.

> Louisiana and the others are trying to by the Jon-Juwee of write-in candidates.

> R. Doc. 12, pp. 2-3.

The Court does not find Plaintiff's "elephant example" to be helpful in explaining his position that *Burdick* is somehow not controlling.

[26] The Court recognizes that "the State has a less important interest in regulating Presidential elections than statewide or local elections, because the outcome of the former will be largely determined by voters beyond the State's boundaries." *Anderson v. Celebrezze*, 460 U.S. 780, 795 (1983).   However, in light of this Court's comparison of the Louisiana Election Code requirements with those which have passed constitutional muster in other cases, the arguably lower state interest does not change the Court's analysis here.

(granting motion to dismiss Plaintiff's complaint alleging that the Louisiana Election Code deprived him of his right to be listed as an independent candidate on the Louisiana ballot for the 2008 Presidential Election and explaining "[i]n the present case, plaintiff had two options: to send in the $500 filing fee before the deadline or to obtain the necessary, notarized signatures before the deadline. The Court finds that the requirements reasonably reflect the state's interest in conducting orderly elections and do not unfairly or unnecessarily burden the availability of political opportunity and do not deny any cognizable group a meaningful right to representation.")

## III.    Recommendation

For the foregoing reasons, it is recommended that this matter be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B).[27]

Signed in Baton Rouge, Louisiana, on June 27, 2016.


**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[27] The Court recommends that this suit be dismissed with prejudice as opposed to permitting Plaintiff an opportunity to amend his Complaint to attempt to state a cause of action.  In light of the nature of the allegations and Plaintiff's testimony at the *Spears* hearing, the Court believes any amendment to the Complaint would be futile.  See *Jebaco, Inc. v. Harrah's Operating Co., Inc.*, 587 F.3d 314, 322 (5th Cir. 2009) ("[L]eave to amend is to be granted liberally unless the . . . amendment would be futile.") (citations omitted).